Barbara McDONNELL, Executive Director, Colorado Department of Institutions; and Colorado Department of Institutions, Petitioners,

v.

JUVENILE COURT IN AND FOR the SECOND JUDICIAL DISTRICT OF the STATE OF COLORADO, and the Honorable David E. Ramirez, one of the Judges thereof, Respondents.

No. 93SA175.

Supreme Court of Colorado,
En Banc.

Dec. 13, 1993.

Gale A. Norton, Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Paul Farley, Deputy Atty. Gen., John August Lizza, First Asst. Atty. Gen., and Toni Jo Gray, Asst. Atty. Gen., Denver, for petitioners.

Kent Spangler, guardian ad litem, for Minor Child, J.M.

Justice ERICKSON delivered the opinion of the Court.

In this original proceeding the petitioners seek relief in the nature of prohibition and assert that we should invoke our general superintending power.[1] The petitioners also seek to prevent the respondent judge from using the contempt power to force compliance with his orders. We issued a rule to show cause and now make the rule absolute.

## I

The juvenile court, in three separate cases, committed C.W., J.M., and E.H. to the Department of Institutions (DOI).[2] In each case, the court ordered the DOI not to send the juvenile to the Glen Mills School in Concordville, Pennsylvania. In the orders regarding C.W. and J.M., the court stated that if the DOI sent the juvenile to the Glen Mills school, the DOI would be held in contempt of court. The DOI accepted custody of the three juveniles and determined that C.W. and J.M. should be placed in the Glen Mills School. The determination was made after the DOI examined and evaluated each youth and considered the physical plant capacity and program limitations of the various Colorado facilities.[3]

1. Original jurisdiction under C.A.R. 21 is appropriate when there is a request for review of "whether a trial court exceeded its jurisdiction or seriously abused its discretion, coupled with no adequate remedy on appeal." *People v. Young,* 814 P.2d 834 (Colo.1991). The issue presented in this original proceeding is whether the respondent trial court exceeded its jurisdiction or seriously abused its discretion in forbidding the DOI to place three youths in the Glen Mills School. The DOI has no appellate remedy. It was not a party to any of the actions below and did not have the right to intervene in any of these actions. *People v. Ham,* 734 P.2d 623 (Colo.1987). Because of the issue involved and the inability of the DOI to appeal the court's final orders, original jurisdiction exists.

2. A juvenile court has the option of either imposing a sentence or committing the juvenile to the DOI. § 19-2-703, 8B C.R.S. (1993 Supp.).

3. The Director of the Denver Metro Assessment Center for the Division of Youth Services (DYS), explained the process by which juveniles are placed in the Glen Mills school. DYS utilizes an evaluation form which considers a variety of factors such as commitment charge, prior adjudications, age at first adjudication, drug and alcohol abuse, prior placements, etc. In addition to the criteria based on the individual, one of the factors taken into consideration in determining where to place a juvenile is the physical plant capacity of Colorado's juvenile facilities. During the fiscal year 92-93, DOI has provided juvenile residential services at 120% of the available institutional capacity. It costs $92 per day per youth to commit a juvenile to the Glen Mills school. It costs Colorado taxpayers between $124 and $150 per day per youth to provide DOI residential services to juveniles.

If DYS determines that a certain juvenile is a candidate for placement at the Glen Mills school, the juvenile is added to a list of potential applicants. The Glen Mills school admissions coordinators interview the juveniles who are on the list and select candidates. The coordinators

The DOI alleges it is forced either to violate the placement required by statute or the juvenile court's order. According to the DOI, the orders not to place the juveniles at the Glen Mills School are not binding because the juvenile court does not have subject matter jurisdiction to supervise the DOI or personal jurisdiction over the DOI.[4] The response to our rule to show cause was that the orders were proper because the juvenile court was preventing the Executive Branch from exceeding its statutory authority.[5] We hold that the juvenile court does not have subject matter jurisdiction to supervise the DOI.

## II

### A

■ The juvenile court for the City and County of Denver has no jurisdiction except that provided by statute. Colo. Const. art. VI, § 15; § 13–8–103, 6A C.R.S. (1987); *see also Pueblo County Comm'rs v. District Court*, 708 P.2d 466 (Colo.1985); *City and County of Denver v. Brockhurst Boys Ranch, Inc.*, 195 Colo. 22, 575 P.2d 843 (1978). The jurisdiction of a juvenile court to sentence offenders is set forth in section 19–2–703(1)(a), 8B C.R.S. (1992 Supp.) which states:

> The court may impose any sentence, or combination of sentences when appropriate, provided under this subsection (1) or subsection (3) of this section; except that any juvenile delinquent committed to the department of institutions may be placed in the Lookout Mountain school, the Mount View school, or any other training school or facility, or any other disposition may be made which the department may determine as provided by law.[6]

then meet with the parents or guardians of the candidates at DYS facilities. In order to be committed to the Glen Mills school, the juvenile must agree to attend the school. In addition, the juvenile's parents or guardians must give permission for the juvenile to attend the school. The juveniles return to Colorado three times a year for six days.

4. We need not address the issue of personal jurisdiction because we hold that the court did not have subject matter jurisdiction. Similarly,

A juvenile court does not have jurisdiction over the placement of a delinquent once the delinquent is committed to the DOI. *Kort v. Hufnagel*, 729 P.2d 370 (Colo.1986); *Chonoski v. State*, 699 P.2d 416 (Colo.App. 1985).

■ In addition to the statutory limitation the General Assembly has placed on a juvenile court's jurisdiction, the doctrine of separation of powers requires that in most instances the Judicial Department should not impose restrictions on the Executive Department. *See, e.g., People v. Montgomery*, 669 P.2d 1387 (Colo.1983); *People ex rel. Dunbar v. District Court*, 180 Colo. 107, 502 P.2d 420 (1972). The province of the Executive Branch is to see that the laws are faithfully executed. *Colorado Gen. Assembly v. Lamm*, 704 P.2d 1371 (Colo.1985). The Executive Branch, in order to be separate from the other two branches of government, must function independently within its sphere of operation. *Lawson v. Pueblo County*, 36 Colo.App. 370, 540 P.2d 1136 (1975). Generally, a district court does not have the right to interfere with the Executive Branch of government in performance of its statutory duties. *Whittington v. Bray*, 200 Colo. 17, 612 P.2d 72 (1980); *State Bd. of Cosmetology v. District Court*, 187 Colo. 175, 530 P.2d 1278 (1974). Determining whether a court has intruded into the sphere of the Executive Branch requires a case-by-case evaluation. *C.C.C. v. District Court*, 188 Colo. 437, 535 P.2d 1117 (1975); *Mac Manus v. Love*, 179 Colo. 218, 499 P.2d 609 (1972).

■ In this case, the issue of whether the juvenile court has intruded into the powers of the Executive Branch is resolved by *Kort v. Hufnagel*, 729 P.2d at 372–73.

we need not exercise our general superintending power over lower courts in this case.

5. The respondent appointed J.M.'s guardian ad litem to respond to our order to show cause.

6. Subsections one and three set forth the sentencing authority of the juvenile court. It is not necessary to address these subsections because the court chose to commit the juveniles to the DOI.

In *Kort*, the trial court committed an individual to the DOI, but prohibited transfer of that individual to any setting other than a maximum security unit at the Colorado State Hospital. We held the court's order was issued without subject matter jurisdiction and violated the doctrine of separation of powers. We specifically noted that the trial court had statutory authority and subject matter jurisdiction to place the defendant in the custody of the DOI, but ruled there was no indication that the General Assembly intended to give a district court the authority to supervise the DOI or the ability to override the DOI's transfer decisions.

Here, the juvenile court attempted to supervise and control the DOI's placement decision by prohibiting the DOI from transferring the juveniles to the Glen Mills School. *Kort* established that the juvenile court violated the doctrine of separation of powers and lacked subject matter jurisdiction to order the DOI not to send C.W., J.M., or E.H. to the Glen Mills School.

### B

█ The guardian ad litem (GAL) for J.M. responded to our order to show cause and raises the issue of whether the DOI has the authority to contract with facilities such as the Glen Mills School. The GAL asserts that the juvenile court's order can be justified as an exercise of the court's power to limit actions of the DOI that exceed the General Assembly's statutory grant of authority.

Placement of juveniles committed to the DOI must be "as provided by law." § 19–2–703(1)(a), 8B C.R.S. (1993 Supp.). Section 19–2–1101(3), 8B C.R.S. (1993 Supp.), states: "Once a juvenile is committed to the department of institutions, he shall remain in a facility directly operated by the department of institutions or in a secure facility contracted for by the department of institutions." The power to contract is provided by law. Therefore, the question is whether the General Assembly limited the DOI's power to contract to in-state facilities.

At the time the juvenile court sentenced C.W., J.M., and E.H., the power of the DOI to contract for care of juveniles committed to it was contained in section 19–2–1110, 8B C.R.S. (1992 Supp.), which states:

> The executive director of the department of institutions may enter into agreements or contracts with *any* governmental unit or agency or private facility or provider cooperating or willing to cooperate in a program to carry out the purposes of this part 11 [Institutional Facilities and Transfers].

§ 19–2–1110(1), C.R.S. (1992 Supp.) (emphasis added). The General Assembly's use of the word "any" evinces an intent to allow the DOI broad discretion in contracting for the care of juveniles.

Any doubt about the General Assembly's intent to allow the DOI to contract with out-of-state providers is resolved by the legislative history regarding funding of the DOI's placement of juveniles in out-of-state facilities. The General Assembly specifically appropriated funds for out-of-state placement.

On November 24, 1992, the Colorado Joint Budget Committee requested that the executive director of the DOI submit a written response to the following question: "Has the Department explored the possibility of placing adjudicated juveniles out of state? Please provide a comparison of costs associated with placements in other states versus placements with current in-state vendors." In response, the DOI identified two potential out of state vendors. On December 16, 1992, the DOI submitted a supplemental request for $427,000 for juvenile placements. The DOI, in its request for additional funding, stated the amount was "based upon the availability of 35 out-of-state beds as of March 1, 1993."

On January 26, 1993, the Joint Budget Committee considered the DOI's request for additional money for out-of-state placement and unanimously passed a supplemental appropriation. In approving the appropriation, the Committee stated that it was recommending the DOI use its funds "to begin placing youths at the Glen Mills facility as that facility's capacity permits."

The Committee also reduced the supplemental appropriation from $427,000 to $144,000 concluding "the Division would be able to place up to 35 youths at the Glen Mills School by June 1993." Senate Bill 93–206, which was approved by the General Assembly, includes the $144,400 in additional funding for the purchase of the thirty-five out of state placements. As a result of the appropriation, the DOI entered into a contract with the Glen Mills School.

As part of its fiscal year 1993–94 budget, the DOI requested $1,843,437 for placements at the Glen Mills School. The Joint Budget Committee approved the appropriation for out-of-state placements and, in its appropriations report for 1993–94, stated: "The following New General Fund dollars are included in the appropriation to address overcrowding: (1) 1.2 million to annualize 35 placements at the Glen Mills School in Pennsylvania." Senate Bill 93–234, which was passed by the General Assembly, included $1,175,300 for out-of-state placements.

At the same time the General Assembly was appropriating money for out-of-state placements, it amended section 19–2–1110(1) to read:

> The executive director of the department of institutions *shall, subject to available appropriations*, enter into agreements or contracts *deemed necessary and appropriate* with any governmental unit or agency or private facility or provider cooperating or willing to cooperate in a program to carry out the purposes of this part 11.

§ 19–2–1110(1), C.R.S. (1993 Supp.) (emphasis indicates amended language). The statute as amended restricts the ability of the DOI to contract by limiting the available appropriations. Although the General Assembly could have limited the placement of juveniles to in-state facilities, it only limited the DOI's placement authority by requiring the existence of sufficient funds. The General Assembly appropriated funds for out-of-state placement and, by its amendment to section 19–2–1110(1), indicated the director of the DOI has the authority to commit juveniles to out-of-state facilities.

The General Assembly was aware that the DOI was sending juveniles out of state and intended the phrase "any governmental unit or agency or private facility or provider" contained in section 19–2–1110(1) to be read in conformity with the plain meaning of the term, not as "any [Colorado] governmental unit or agency or private facility or provider" as the GAL urges. Because the statute allows the DOI to contract with any provider, and the General Assembly intended the DOI to contract with out-of-state providers, the DOI did not exceed its authority in attempting to place C.W. and J.M. in the Glen Mills School.

### III

The juvenile court did not have subject matter jurisdiction to order the DOI not to place C.W., J.M., or E.H. in the Glen Mills School. Therefore, we make the rule to show cause absolute.

VOLLACK, J., does not participate.