**In re the MARRIAGE OF Steven W. NEWELL, Appellant,**

and

**Ruth F. Newell, Appellee.**

**No. 06CA1795.**

Colorado Court of Appeals, Div. V.

July 10, 2008.

Thomas N. Scheffel & Associates, P.C., Bradley S. Abramson, Denver, Colorado, for Appellant.

Mustain–Wood, Walker and Schumacher, LLC, Randall C. Mustain–Wood, Jamie L. Wright, Littleton, Colorado, for Appellee.

Opinion by Judge J. JONES.

In this post-dissolution of marriage proceeding, Steven W. Newell (father) appeals from the magistrate's order of March 9, 2006, modifying father's parenting time and decision-making responsibilities, and from the district court's order affirming the magistrate's ruling. We affirm the orders in part, reverse the orders in part, and remand for further proceedings.

Father and Ruth F. Newell (mother) are the parents of a child who has limited intellectual abilities and multiple physical problems. In 1999, the parties entered into a separation agreement which provided, among other things, that the child would reside primarily with mother and that she would have all decision-making responsibilities except with respect to surgical decisions, behavioral medication issues, and potentially life-threatening conditions. The agreement was approved by the court and incorporated into the decree dissolving their marriage.

In October 2002, the magistrate determined that the special advocate was better qualified than the court to address the special needs of the child. Accordingly, the magistrate conferred special master authority on the special advocate pursuant to C.R.C.P. 53.

In May 2004, the special master determined that the parenting time schedule should be modified to ensure that the child would spend a relatively equal amount of time with each parent. To accomplish this, the special master ruled that the child should spend six overnights with mother and eight with father during each two-week period while school was in session, and alternating weeks with each parent during the summer break.

Mother objected to the special master's ruling, and requested a parenting time evaluation. The evaluation was completed in May 2005. The investigators concurred in most respects with the findings and recommendations of the special master, and, with minor changes, recommended the same parenting time schedule.

Mother then retained additional experts, including a social worker with expertise in needs assessment to serve as a rebuttal expert. This expert opined that the special master and the parental responsibilities investigators had not given sufficient consideration to the special needs of the child. She recommended that further investigations be undertaken to evaluate the child for problems with speech and language and for possible attention deficit hyperactivity disorder (ADHD), and that efforts should be made to secure additional services for the child to assist him in developing the skills that he would need for independent living. She also recommended that the child continue to reside with mother on school nights.

After three days of hearings, the magistrate found that the alternate-week parenting time plan recommended by the special master was not in the child's best interest, and ordered instead that father should have parenting time on alternate weekends. In addition, the court granted mother sole decision-making authority on all matters relating to the child. Father now appeals from both the

magistrate's order and the district court's order affirming the magistrate's order.

## I. Parenting Time

### A. Best Interests Standard

Father contends that the magistrate erred in setting aside the special master's May 25, 2004, ruling by finding that the special master's ruling constituted a modification of residential household, and that accordingly, the magistrate erred in concluding that the special master should have applied the endangerment standard rather than the best interests standard in determining whether parenting time should be modified. We agree that the endangerment standard did not apply to the modification of parenting time proposed by the special master. However, we do not agree that the magistrate erred in setting aside the special master's ruling.

Section 14–10–129(1)(a)(I), C.R.S.2007, provides that a court may modify parenting time whenever doing so "would serve the best interests of the child." Subsection (2) of section 14–10–129 specifies circumstances in which the court may modify a prior order concerning parenting time that substantially changes the parenting time as well as changes the party with whom the child resides a majority of the time. In such cases, the modification may not be made unless the court also determines, among other things, that the child's environment "endangers the child's physical health or significantly impairs the child's emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child." § 14–10–129(2)(d), C.R.S.2007.

■ Here, the change in parenting time proposed by the special master would not have resulted in the child's residing with father, rather than mother, a majority of the time. Because there was no "modification of residential household," section 14–10–129(2) did not apply, and the special master was not required to apply the endangerment standard as set forth in section 14–10–129(2)(d). To the extent that the magistrate concluded otherwise, the magistrate erred.

However, our review of the magistrate's order convinces us that the magistrate did not set aside the special master's ruling solely because of concern that the special master had failed to apply the endangerment standard in determining whether to modify parenting time. The magistrate ultimately applied the correct standard, finding that the parenting time plan proposed by the special master was not in the child's best interests.

### B. Sufficiency of the Evidence

Father also contends that the portion of the magistrate's order that modifies the parenting time order is clearly erroneous and an abuse of discretion because the weight of the evidence compels a contrary result. He argues that because the experts retained by mother were not parenting time experts, they were not qualified to provide a recommendation regarding parenting time and the magistrate should not have considered their recommendations. We do not agree.

■ A determination made by a referee or special master appointed under C.R.C.P. 53 is merely a recommendation to the court, *In re Marriage of Debreceni*, 663 P.2d 1062, 1064 (Colo.App.1983), and the court is free to substitute its own conclusions for those of the master. *In re Marriage of Westlake*, 674 P.2d 1386, 1387 (Colo.App.1983). Further, the court may choose to receive further evidence.

Mother's experts included a pediatrician specializing in the diagnosis and treatment of children with ADHD, an expert in assessing children's special needs, and an expert in vocational assessment of persons with disabilities. Each was accepted by the magistrate as an expert in his or her area of expertise.

■ Whether to admit expert testimony is a matter within the broad discretion of the trial court, and absent an abuse of that discretion, the court's decision will not be overturned. *People v. Martinez*, 74 P.3d 316, 322 (Colo.2003). The trial court also has broad discretion in determining the relevance of evidence proffered to it. *Boettcher & Co. v. Munson*, 854 P.2d 199, 210–11 (Colo.1993). We are not persuaded that the magistrate

abused that discretion in admitting the testimony and reports offered by these experts, or in considering such evidence when determining whether the parenting plan recommended by the special master was in the child's best interests.

Evidence presented to the court indicated that the child had difficulty with frequent transitions between mother's home and father's home, and that he would benefit from consistency and stability, especially during the school week. The parental evaluators and the experts retained by mother agreed on this, but differed as to whether the child's need for consistency could be accommodated by simplifying the alternating-week parenting time plan recommended by the special master.

■ Because the evidence was conflicting as to which of the parenting time plans under consideration would best serve the child's need for consistency, we defer to the magistrate's choice. *See In re Marriage of Bowles*, 916 P.2d 615, 617 (Colo.App.1995) (the trial court's resolution of conflicting evidence is binding on review). We conclude that the magistrate's order is not clearly erroneous simply because the magistrate found the evidence presented by mother's experts more persuasive than the evidence presented in support of the special master's parenting plan.

## II. Parental Decision–Making

Father contends that the portion of the magistrate's order that modifies parental decision-making responsibility is not supported by the evidence, and thus is clearly erroneous and an abuse of the court's discretion. We do not agree.

Under section 14–10–131(2)(c), C.R.S.2007, the court may modify a decree allocating decision-making responsibility if it finds that the retention of the existing allocation of decision-making responsibility would endanger the child's physical health or significantly impair his emotional development, and that the harm likely to be caused by making the change is outweighed by the advantage of a change to the child.

Here, mother testified that father often was not supportive of her decisions regarding evaluation and treatment of the child's problems, and that even though father's concurrence in many of her decisions was not required, his opposition to her plans to obtain evaluations or arrange treatment had sometimes caused those plans to fail because of the reluctance of third parties, such as school officials, to proceed in the face of father's opposition. Expert witnesses testified that the child needed further evaluation and treatment, and that father had obstructed their efforts to evaluate the child and address his problems.

The magistrate noted evidence of father's reluctance to recognize the child's problems, and found that he "continues to deny the full extent of those problems as evidenced by his unwillingness to recognize the child may have problems which are newly emerging and which require treatment, especially if those problems are identified by [mother]." The magistrate concluded that father was unable to co-parent with mother, that "to leave decision-making as it currently stands does endanger the child's physical and emotional development," and that it would be in the child's best interests to vest sole decision-making in mother in all areas without exception.

■ We reject father's argument that because he had shared decision-making responsibilities in only three narrow areas, evidence relating to the parties' lack of agreement or lack of cooperation in any other areas was necessarily irrelevant. Mother's testimony and other evidence presented at the hearing was sufficient to support a conclusion that father's opposition to her plans for the child was a problem even in areas in which she had full control. Under such circumstances, we cannot say that the magistrate was unreasonable in concluding that an allocation of all decision-making authority to mother was needed to clarify her authority and serve the child's best interests.

There is support in the record for the magistrate's findings regarding father's reluctance to recognize the child's problems and father's inability to cooperate with mother in addressing those problems. According-

ly, we will not disturb those findings, nor will we disturb the magistrate's conclusion that the child was endangered by father's actions and that vesting sole decision-making responsibility in mother was necessary to protect the child. *See Gebhardt v. Gebhardt,* 198 Colo. 28, 30, 595 P.2d 1048, 1050 (1979) (an appellate court cannot substitute itself as a finder of fact and factual findings of the trial court are not to be disturbed unless clearly erroneous and not supported by the record).

### III. Restrictions on Father Voicing Concerns

Father contends that the portion of the magistrate's order that bars him from voicing his concerns about the child's care or education violates his fundamental right to make decisions concerning the care, custody, and control of the child under the United States Constitution, as well as his right to free speech under both the United States Constitution and the Colorado Constitution. We conclude that a remand for further proceedings is necessary with respect to father's free speech argument, and that accordingly, we need not address at this time his argument concerning his fundamental right to make decisions concerning his child's care.

### A. Federal and State Protection of Freedom of Speech

Freedom of speech is protected under the First Amendment to the United States Constitution, which provides, in relevant part, that "Congress shall make no law . . . abridging the freedom of speech," and under article II, section 10 of the Colorado Constitution, which provides, in relevant part, that "[n]o law shall be passed impairing the freedom of speech; every person shall be free to speak, write or publish whatever he will on any subject, being responsible for all abuse of that liberty. . . ."

Article II, section 10 of the Colorado Constitution provides greater protection of free speech than does the First Amendment. *Lewis v. Colorado Rockies Baseball Club, Ltd.,* 941 P.2d 266, 271 (Colo.1997). However, where neither party argues that a conceptual framework different from First Amendment analysis governs the analysis of a free speech issue under the Colorado Constitution, and federal jurisprudence has established a framework for considering the issue, our analysis may proceed solely under the First Amendment. *Holliday v. Reg'l Transp. Dist.,* 43 P.3d 676, 681 (Colo.App. 2001).

Under the First Amendment, the government may regulate the content of constitutionally protected speech in order to promote a compelling interest as long as it chooses the least restrictive means to further that interest. *Sable Commc'ns of California, Inc. v. FCC,* 492 U.S. 115, 126, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989). We view the limitations placed on father's speech as a content-based restriction of his speech. Thus, the magistrate's order may be upheld only if the restriction imposed by the magistrate's order promotes a compelling state interest and is the least restrictive means of promoting that interest.

First Amendment questions of "constitutional fact" require de novo appellate review. *Kuhn v. Tribune–Republican Publ'g Co.,* 637 P.2d 315, 318 (Colo.1981). Accordingly, we must make an independent review of the record to ensure that the judgment rendered by the magistrate and adopted by the district court does not intrude on father's right of free speech. *See Holliday,* 43 P.3d at 681.

### B. The Right to Free Speech and the State's Interest in the Welfare of the Child

Courts in some jurisdictions have held that the state's interest in protecting the best interests of a child is a compelling interest that can justify limiting a parent's constitutional right to free speech. *See, e.g., Borra v. Borra,* 333 N.J.Super. 607, 756 A.2d 647, 650 (Ch. Div.2000) (injunction against father's efforts to contest mother's application for country club membership was proper in light of the state's *parens patriae* interest in the welfare of the children, which was threatened by the parents' conflict over the membership; although father had a First Amendment right to speak his mind freely, "New Jersey courts have consistently recognized

that the 'best interests' of the children can be made paramount to other fundamental rights").

In Colorado, however, absent demonstrated harm to the child, the best interests of the child standard has been determined to be "insufficient to serve as a compelling state interest overruling the parents' fundamental rights." *In re Marriage of Ciesluk,* 113 P.3d 135, 145 (Colo.2005). Thus, we find *Borra,* and cases like it, unpersuasive.

No Colorado court has yet identified a compelling state interest sufficient to overcome a parent's First Amendment right to free speech. However, a division of this court recently determined that proof that a parent's exercise of parental responsibilities caused "actual or threatened physical or emotional harm to a child" would be sufficient to establish a compelling state interest sufficient to justify interference with the parent's right to exercise another First Amendment right, the right to the free exercise of religion. *In re Marriage of McSoud,* 131 P.3d 1208, 1216 (Colo.App.2006).

■ Because we perceive no basis for applying a different standard in a case involving the right to free speech, we conclude that a showing that father's exercise of his free speech rights threatened the child with physical or emotional harm, or had actually caused such harm, would establish a compelling state interest sufficient to justify a restriction on his First Amendment free speech rights. This is a demanding standard when properly applied. "[N]ot every type or degree of actual or threatened physical or emotional harm will suffice; to constitute a compelling state interest the harm must be 'substantial.'" *McSoud,* 131 P.3d at 1216. In addition, "harm to the child … should not be simply assumed or surmised; it must be demonstrated in detail." *Id.* (quoting *Felton v. Felton,* 383 Mass. 232, 418 N.E.2d 606, 607 (1981)).

■ Here, the magistrate found that father had rarely agreed with mother's decisions for the child, and that father had "used his joint decision-making power to the child's detriment." The magistrate further found that because of father's inability to cooperate and consult with mother, leaving the existing allocation of decision-making unchanged would "endanger the child's physical and emotional development." On the basis of these findings, the magistrate ordered that father should not be permitted to continue to present objections to the child's treatment or education to the child's school or to the child's care providers.

■ We conclude that the magistrate's findings are not adequate to justify the restriction imposed. On remand, the court should direct the magistrate to reconsider whether restrictions on father's right to communicate with third parties regarding the child are warranted. If any restrictions are deemed necessary, the magistrate must make additional findings regarding the type and degree of harm that the child has suffered or may suffer because of the speech that is to be restricted. The magistrate should also identify specifically the evidence relied upon so that the reviewing court may determine whether the harm that justifies the restriction has been "demonstrated in detail." If additional evidence is needed, the magistrate may, in her discretion, schedule additional hearings.

## C. Other Alternatives

■ In order to survive strict scrutiny, any restriction on father's speech must be the least restrictive alternative that would achieve the legitimate goal of avoiding actual or threatened substantial harm to the child. A ruling that "effectively suppresses a large amount of speech that adults have a constitutional right to receive and to address to one another" is "unacceptable if less restrictive alternatives would be at least as effective." *Reno v. American Civil Liberties Union,* 521 U.S. 844, 874, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997).

Father suggests that less intrusive measures, such as informing care providers and educators that mother has decision-making authority for the child, would be at least as effective in protecting the child against the threatened harm as restricting his speech. We agree that alternative measures should be considered, and father's speech should be restricted only if the magistrate finds that

such measures would not adequately protect the child.

On remand, the court should direct the magistrate to describe any alternative measures considered by her and, if a restriction of father's speech is deemed necessary, state the reasons why the alternative measures were rejected. Any restriction that is imposed should be as narrowly tailored as possible.

## IV. Attorney Fees Below

Father contends that the order awarding attorney and expert fees to mother and the subsequent judgment against him were clearly erroneous and an abuse of the court's discretion. He argues that there is no evidence as to the reasonableness of the fees; that the magistrate made no findings as to their reasonableness; that it is impossible to determine whether the allocation of fees was justified because the magistrate failed to indicate what portion of the award was attributable to attorney fees and what portion was attributable to expert fees; that the evidence regarding the parties' respective financial circumstances and earning abilities was inadequate; that the magistrate failed to consider mother's significant financial resources and his lack of them and failed to explain how the fee award served to equalize the burden of the fees between the parties; that there was no hearing after mother submitted a supplemental affidavit of attorney fees and costs; and that for all of these reasons, the magistrate's award must be set aside. We do not agree.

The magistrate's order indicates that the issue of the apportionment of fees was raised at the hearing held on August 31, 2004, and the magistrate indicated at that time that the issue would be reviewed. Both parties subsequently submitted financial affidavits to the court. Both parties testified at trial as to their financial circumstances, and mother submitted an affidavit of fees, and, later, a supplemental affidavit of fees. Based on this record, the magistrate found that father had the financial resources to contribute to the cost of the fees incurred by mother. Father was ordered to contribute $50,000 toward those fees.

We are not persuaded that there was no evidence as to the reasonableness of the fees or that the magistrate failed to consider such evidence. The affidavit of attorney fees submitted by mother at trial included detailed information about the services provided by mother's attorneys, and during the course of the trial the magistrate was provided with detailed information about the services performed by each of the experts. We may presume that the magistrate considered all of this information. The fact that the magistrate awarded mother $50,000 in fees indicates that the magistrate was satisfied that at least that amount was reasonably incurred.

■ The magistrate expressly stated that both parties' financial statements were reviewed before the decision was made to award fees to mother, and that the court was cognizant that father had incurred a significant amount of attorney fees and that mother had significant assets. We note that it is within the trial court's discretion to determine the inferences and conclusions to be drawn from the evidence presented to it. *In re Marriage of Lewis*, 66 P.3d 204, 207 (Colo. App.2003). Thus, the fact that the evidence could have supported a finding that mother could pay the fees herself does not demonstrate that the trial court abused its discretion in determining that father could and should pay a portion of mother's costs.

Father argues that it is impossible to determine whether the allocation of fees was justified without information as to what portion of the award was attributable to attorney fees and what portion was attributable to expert fees. We perceive no reason why this should be so, and for that reason we reject this argument.

■ Father also argues that an additional hearing should have been held after mother submitted her supplemental affidavit of fees in November 2005. Because there is no indication in the record that father requested a hearing, we conclude that he has waived any right that he might have had to a hearing.

We find that there are no grounds that would require us to set aside the award of fees to mother. Accordingly, we decline to do so.

### V. Attorney Fees on Appeal

■■■■ Mother requests that she be awarded the attorney fees that she incurred in defending this appeal pursuant to sections 13–17–102 to –106, C.R.S.2007; section 14–10–119, C.R.S.2007; and C.A.R. 38(d). Under C.A.R. 39.5, a party claiming attorney fees shall specifically request them, and state the legal basis therefore, in the party's principal brief in the appellate court. A request which merely identifies the statute under which fees are requested, without stating the specific grounds that justify an award of fees, does not adequately comply with this rule. Accordingly, we will not consider mother's request for an award of fees under sections 13–17–102 to –106. Because the trial court is better equipped to determine questions of fact and to make a full and complete investigation and adjudication, mother's request for an award of attorney fees under section 14–10–119 should be presented to the trial court. *See Watson v. Watson,* 135 Colo. 296, 305–06, 310 P.2d 554, 560 (1957). On remand, the trial court may hear mother's motion for attorney fees on proper application, and make such order as the facts and circumstances may warrant.

The orders are reversed as to the restrictions on father's right to communicate with third parties regarding the child, and the case is remanded to the trial court for further proceedings consistent with this opinion. The orders are affirmed in all other respects.

Judge ROY and Judge GRAHAM concur.