23CA1835 Marriage of Pittman 03-06-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1835
Boulder County District Court No. 13DR30319
Honorable Thomas F. Mulvahill, Judge

In re the Marriage of

George Stephen Pittman,

Appellee,

and

Judi Beth Pittman n/k/a Judi Beth Atwood,

Appellant.

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE YUN
J. Jones and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 6, 2025

Aitken Law, LLC, Sharlene J. Aitken, Denver, Colorado, for Appellee

Wells Family Law, P.C., Chelsea Augelli, Denver, Colorado, for Appellant

¶ 1    In this post-dissolution of marriage proceeding involving Judi Beth Pittman, now known as Judi Beth Atwood (mother), and George Stephen Pittman (father), mother appeals from the district court's adoption of the magistrate's order that resolved (1) her June 2022 motion to modify parenting time and decision-making and (2) the parties' respective motions to enforce the court's parental responsibilities orders.  Specifically, mother challenges the portion of the magistrate's order providing that she "cannot grieve any professional unless granted Court permission to do so."  We reverse the portion of the order restricting mother's ability to grieve professionals and remand the case for further proceedings.

## I.    Background

¶ 2    The history of the proceedings between the parties is lengthy and acrimonious.  As part of the 2014 dissolution decree, the parties agreed that mother would be the primary residential parent for their two children, while father would have regular parenting time.  The parties also agreed to exercise joint decision-making.

¶ 3    However, in 2016, father was awarded sole decision-making responsibility for all medical and educational decisions, and mother's parenting time was restricted to supervised visits based on

a finding that the children were in imminent emotional danger while in her care. Specifically, the district court found that mother had repeatedly and falsely accused father of abusing the children, causing harm to the children through unnecessary interactions with law enforcement and an ongoing effort to portray father as an abuser.

¶ 4 Subsequent orders maintained the restriction on mother's parenting time. In doing so, the district court found that mother had difficulty working with professionals engaged in the case given her animosity toward father:

> [Mother's] deteriorating relationships have included prior [parenting coordinator/decision-makers (PC/DMs)], the children's former therapist, teachers, school administrators, etc. She has filed grievances or complaints against the children's therapist, the initial [parental responsibilities evaluator (PRE)] in this case, school personnel with the school board, and against police officers with internal affairs. By email communication, she threatened to file a DORA complaint against [the second PRE].

A later stipulation, which the court adopted, prohibited the parties from sending "excessive or harassing communication [to] any professional providing care for the minor children."

¶ 5　　In June 2022, mother filed a motion to lift the restriction on her parenting time and reestablish joint decision-making. She concurrently filed a motion to enforce parenting time, alleging that father had violated the current orders in various ways. Father then filed his own motion to enforce the court's orders and sought, among other sanctions, to hold mother in contempt of court for sending excessive and harassing communications to professionals providing care for the children.

¶ 6　　A magistrate appointed a child and family investigator (CFI) to investigate and make recommendations as to the issues raised by both parties. The CFI's report, which was admitted into evidence at the subsequent hearing on the parties' motions, summarized the involvement of numerous professionals in the case, including six PC/DMs, multiple parenting time supervisors, and two PREs.

¶ 7　　The CFI's report further explained that mother had a history of threatening and intimidating the various professionals who were involved in the case or were providing support to the family. For example, the report stated that mother had accused the second PRE of accepting bribes, had accused one of the PC/DMs of having an affair with father, and had caused another PC/DM to withdraw due

to "numerous deleterious statements" that mother made towards the PC/DM.

¶ 8    The CFI's report explained that mother's intimidation of professionals extended to the children's treatment providers, including threats to grieve and sue the children's original therapist. Yet mother had failed to understand how her actions could interfere with the children's treatment. According to the CFI, mother's conduct towards the children's treatment providers continued to the present, as mother had recently filed an unsubstantiated grievance against the youngest child's therapist, Ann Norris. At the hearing, Ms. Norris testified that mother had also sent her numerous threatening emails, including an email suggesting that mother had retained a "federal attorney" to take legal action against her. Ms. Norris explained that she resigned as the child's therapist because mother's actions were affecting the child's well-being.

¶ 9    Therefore, the CFI recommended "an order [under] which [m]other may not grieve any professional in the case — either who has in the past or is currently or will in the future have a role in this case — without [m]other first getting permission from this Court to do so."

4

¶ 10    The magistrate found mother in contempt of court and maintained the restriction on her parenting time.  The magistrate also ordered that "[m]other cannot grieve any professional unless granted Court permission to do so."  After mother petitioned for review, the district court adopted the magistrate's order.

## II.    Review of Magistrate Orders

¶ 11    Our review of a district court's order adopting a magistrate's decision is effectively a second layer of appellate review.  *In re Marriage of Sheehan*, 2022 COA 29, ¶ 22.  We must accept the magistrate's factual findings unless they are clearly erroneous, meaning they have no support in the record.  *In re Marriage of Young*, 2021 COA 96, ¶ 8.  However, we review de novo questions of law.  *See Sheehan*, ¶ 22; *Young*, ¶¶ 8-9.

¶ 12    Because we act as a second layer of appellate review, we decline to address mother's contention that the reviewing district court judge failed to make sufficient findings of fact and conclusions of law when adopting the magistrate's order.[1]  Instead,

---

[1] In its order adopting the magistrate's ruling, the district court stated that mother "continues to harm her children by scaring away all of their treatment providers" and that "[r]equiring prior court approval prior to [mother] grieving a professional will provide a layer

our review focuses on the magistrate's order, and we give no deference to the district court's determinations.

### III.  Prior Restraint on Mother's Speech

¶ 13    Mother asserts that the portion of the magistrate's order barring her from grieving "any professional" without first obtaining court permission violates her right to free speech under both the United States and Colorado Constitutions.  Because that provision of the magistrate's order is not supported by sufficient findings under *In re Marriage of Newell*, 192 P.3d 529, 535-36 (Colo. App. 2008), and is overly restrictive, we conclude that further proceedings are required.  Since we remand for further proceedings regarding mother's free speech argument, we need not address her argument regarding her fundamental right to make decisions

---

of protection for the children so their treatment providers may continue to assist them without fear of irrational, baseless grievances from [mother]."  However, the magistrate did not make these findings, and it is unclear whether the record supports them. *See In re Marriage of Stephens*, 2022 COA 29, ¶ 22 ("A district court reviewing a magistrate's decision under C.R.M. 7(a) may not alter the magistrate's factual findings unless they are clearly erroneous.").  Because we act as a second layer of appellate review of the magistrate's order, we decline to consider these findings that appear to differ from the magistrate's.

concerning the care, custody, and control of the children under *Troxel v. Granville*, 530 U.S. 57 (2000).

## A. Applicable Law

¶ 14    Freedom of speech is protected under the First Amendment to the United States Constitution and article II, section 10 of the Colorado Constitution. Although the Colorado Constitution provides greater free speech protection than the First Amendment, where, as here, neither party provides us with a framework different from a First Amendment analysis, our analysis may proceed solely under the First Amendment. *See Newell*, 192 P.3d at 535.

¶ 15    "Under the First Amendment, the government may regulate the content of constitutionally protected speech in order to promote a compelling interest as long as it chooses the least restrictive means to further that interest." *Id.* In the context of an order allocating or modifying parental responsibilities, a "showing that [the restricted parent's] exercise of [their] free speech rights threatened the child[ren] with physical or emotional harm, or had actually caused such harm" may constitute a compelling state interest sufficient to justify a restriction on a parent's First Amendment free speech rights. *Id.* at 536.

¶ 16    However, "[t]his is a demanding standard when properly applied." *Id.* "[N]ot every type or degree of actual or threatened physical or emotional harm will suffice; to constitute a compelling state interest the harm must be 'substantial.'" *Id.* (quoting *In re Marriage of McSoud,* 131 P.3d 1208, 1216 (Colo. App. 2006)). Moreover, "harm to the child . . . should not be simply assumed or surmised; it must be demonstrated in detail." *Id.* (quoting *McSoud,* 131 P.3d at 1216).

¶ 17    Finally, "[i]n order to survive strict scrutiny, any restriction on [a parent's] speech must be the least restrictive alternative that would achieve the legitimate goal of avoiding actual or threatened substantial harm to the child[ren]." *Id.* An order that "'effectively suppresses a large amount of speech . . .' is 'unacceptable if less restrictive alternatives would be at least as effective.'" *Id.* (quoting *Reno v. Am. Civ. Liberties Union,* 521 U.S. 844, 874 (1997)).

¶ 18    "First Amendment questions of 'constitutional fact' require de novo appellate review." *Id.* at 535 (quoting *Kuhn v. Tribune-Republican Publ'g Co.,* 637 P.2d 315, 318 (Colo. 1981)). Accordingly, we must independently review the record to ensure

8

that the order issued by the magistrate and adopted by the district court does not intrude on mother's right to free speech. *Id.*

### B. Discussion

¶ 19 We agree with mother that the magistrate did not make sufficient findings required by *Newell,* 192 P.3d at 535-36, before restricting her speech by prohibiting her from grieving professionals without court permission.

¶ 20 In holding mother in contempt, the magistrate found that she had filed an unfounded professional grievance against Ms. Norris and had sent threatening emails to Ms. Norris and one of the previous parenting time supervisors. Moreover, the magistrate found that restoring joint decision-making was not feasible due to mother's "behavior towards [father] and other professionals involved in [the children's] care." And in ordering that mother's parenting time remain supervised, the magistrate found that her "insistence on her beliefs and resultant conduct toward the [children] continues to endanger them."

¶ 21 We conclude that the magistrate's findings are insufficient to justify the restriction on mother's speech given the demanding standard imposed by *Newell,* 192 P.3d at 536. Specifically, the

restriction preventing mother from grieving professionals without court permission was not supported by sufficient findings demonstrating that her grievances would threaten the children with substantial physical or emotional harm, or had actually caused such harm. *See id.*

¶ 22 Father asks us to imply findings in support of the restriction on mother's speech based on the record. While we acknowledge mother's lengthy history of intimidating the professionals involved with the family, we decline to make our own findings in support of the restriction on mother's speech given that the missing findings involve questions of "constitutional fact." *Id.* at 535.

¶ 23 On remand, the district court should direct the magistrate to reconsider whether a restriction on mother's right to grieve professionals is constitutionally warranted. If any restriction is deemed necessary, the magistrate must make additional, discrete findings regarding the "type and degree of harm that the child[ren] ha[ve] suffered or may suffer because of the speech that is to be restricted." *Id.* The magistrate should also identify the specific evidence relied upon so that the reviewing court may determine whether the harm justifying the restriction has been "demonstrated

in detail." *Id.* The magistrate may, at her discretion, schedule additional hearings if additional evidence is needed. *Id.*

¶ 24 Moreover, we agree with mother that the order preventing her from grieving *any* professional without court permission does not represent the "least restrictive alternative that would achieve the legitimate goal of avoiding actual or threatened substantial harm to the child[ren]." *Id.* at 536. Indeed, a plain reading of the restriction even prevents mother from grieving her own medical doctor, therapist, or lawyer, who are professionals that do not otherwise treat the children or assist the parties in implementing the parenting orders. And while father suggests that the present order, in fact, allows mother to grieve her own professionals, we do not see any such exception in the text of either the magistrate's order or the reviewing district court judge's order.

¶ 25 Therefore, the district court should direct the magistrate to consider less restrictive alternative measures, and mother's speech should be restricted only to the extent necessary to protect the children. *See id.* at 536-37. The court should direct the magistrate to describe any alternative measures that were considered and, if a restriction on mother's speech is deemed necessary, state the

11

reasons why the alternative measures were rejected. *Id.* Any restriction that is imposed should be as narrowly tailored as possible. *Id.*

¶ 26 Because we reverse and remand the portion of the order restricting mother from grieving professionals for the magistrate's reconsideration and further findings, we decline to address mother's additional contentions that the restriction was otherwise impermissibly vague and overbroad.

## IV. Separation of Powers

¶ 27 We next address mother's separation of powers argument because the issue is likely to arise on remand. Mother specifically argues that the magistrate could not issue an order requiring her to obtain court permission before filing professional grievances because such an order violates Article 3 of the Colorado Constitution by interfering with the power of the Department of Regulatory Agencies (DORA), which is part of the executive branch, to regulate professionals. *See* § 24-1-122, C.R.S. 2024. We are not persuaded.

¶ 28 Article 3 of the Colorado Constitution provides that "no person or collection of persons charged with the exercise of powers properly

belonging to one [branch of the state government] shall exercise any power properly belonging to either of the others." "The province of the Executive Branch is to see that the laws are faithfully executed," and "in order to be separate from the other two branches of government, [the Executive Branch] must function independently within its sphere of operation." *McDonnell v. Juv. Ct.*, 864 P.2d 565, 567 (Colo. 1993). Therefore, courts generally do "not have the right to interfere with the Executive Branch of government in performance of its statutory duties." *Id.*

¶ 29     However, it is well-established that "[t]he separation of powers doctrine does not require a complete division of authority among the three branches . . . , and the powers exercised by different branches of government necessarily overlap." *Dee Enters. v. Indus. Claim Appeals Off.*, 89 P.3d 430, 433 (Colo. App. 2003); *see also People in Interest of R.W.V.*, 942 P.2d 1317, 1320 (Colo. App. 1997) ("[A]bsolute separation of government functions among the co-equal branches is neither required nor desirable to achieve the constitution's ultimate goal of effective and efficient government."). "Indeed, the fundamental purpose of the doctrine is not to create three mutually exclusive departments of government, but to prevent

one department from exercising power that is essential to another department's exercise of its constitutionally defined functions." *Dee Enters.*, 89 P.3d at 433.

¶ 30     "Determining whether a court has intruded into the sphere of the Executive Branch requires a case-by-case evaluation," *McDonnell*, 864 P.2d at 567, and we conduct such a review de novo, *Hickerson v. Vessels*, 2014 CO 2, ¶ 10.

¶ 31     We do not perceive an order restricting mother's ability to grieve certain professionals, including those regulated by DORA, as violating the constitutional separation of powers. Section 14-10-124(1.5), C.R.S. 2024, affords courts the authority to issue orders allocating parental responsibilities in the best interests of the children. *See also* § 14-10-129.5(2)(h), C.R.S. 2024 (providing that in resolving disputes between parents, a court may issue "[a]ny other order that may promote the best interests of the child or children involved"). And while the authority to regulate professionals such as doctors, therapists, and counselors is vested in DORA, *see* § 24-1-122(3)(m)(I), (jj)-(mm), the courts are vested with the authority to ensure that a parent who lacks medical decision-making responsibility, like mother, does not interfere with

the children's relationship with the professionals selected by the other parent. § 14-10-124(1.5); § 14-10-129.5(2)(h); *see also* § 14-10-130(1), C.R.S. 2024 (providing that a parent "with responsibility for decision-making may determine the child's upbringing, including his or her education, health care, and religious training").

¶ 32    Accordingly, the magistrate's order does not constrain DORA's power to regulate professionals at all. Rather, it restricts mother from grieving professionals without first obtaining court permission and has an incidental or indirect impact on DORA's statutory duties. Thus, to the extent that such an order can be perceived as interfering with the statutory duties of the Executive Branch, we hold that such an order falls within the necessary and permissible overlap between the branches of government. *See Dee*, 89 P.3d at 433; *McDonnell*, 864 P.2d at 567.

¶ 33    We are not otherwise persuaded by mother's contention that an order preventing her from grieving certain professionals without court permission lacks an applicable legal standard by which to assess a proposed grievance. Section § 14-10-124(1.5) provides that the children's best interests guide the court in an allocation of

parental responsibilities proceeding, and we conclude that the magistrate can determine whether a grievance was proposed in good faith by mother in furtherance of the children's best interests.

## V. Attorney Fees

¶ 34 Mother requests her appellate attorney fees under section 14-10-119, C.R.S. 2024, due to the alleged disparities between the parties' respective economic circumstances. Because the district court is better equipped to determine the factual issues regarding the parties' current financial resources, we direct it to address this request on remand. *See* C.A.R. 39.1; *In re Marriage of Schlundt,* 2021 COA 58, ¶ 54.

¶ 35 Father requests his appellate attorney fees on the ground that mother's appeal was substantially groundless and frivolous. *See* § 13-17-102(4), (9)(a), C.R.S. 2024. Given our disposition, we deny this request. *See In re Marriage of Martin,* 2021 COA 101, ¶ 42. Father also requests attorney fees under section 14-10-129.5(4), but that section authorizes an award of fees only against a parent who has failed to provide or exercise court-ordered parenting time, which is not at issue in mother's appeal. Thus, we also deny father's request for attorney fees on that basis.

16

## VI.    Disposition

¶ 36     We reverse the portions of the order providing that mother "cannot grieve any professional unless granted Court permission to do so."  We remand the case for further proceedings consistent with this opinion and direct the court to follow the remand instructions set forth in part III(B) above.  Those portions of the order not challenged on appeal remain undisturbed.

JUDGE J. JONES and JUDGE BROWN concur.