25CA0358 Marriage of Mendard 12-11-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0358
Adams County District Court No. 21DR30368
Honorable Kelley R. Southerland, Judge

---

In re the Marriage of

Christopher Thomas Menard,

Appellant,

and

Jenna Lyn Menard, n/k/a Jenna Lyn Elmore,

Appellee.

---

ORDER AFFIRMED

Division III
Opinion by JUDGE GRAHAM*
Dunn and Lipinsky, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 11, 2025

---

Thomas Law Group, P.C., Sergei B. Thomas, Denver, Colorado, for Appellant

Price Family Law, LLC, Trista Price, Denver, Colorado, for Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1    In this post-dissolution of marriage case involving Christopher Thomas Menard (father) and Jenna Lyn Menard, now known as Jenna Lyn Elmore (mother), father appeals the district court's rejection of the magistrate's decision modifying decision-making responsibility. We affirm.

## I.    Relevant Facts

¶ 2    The parties' marriage ended in 2021. The dissolution decree incorporated their parenting plan, which named mother, who lived in Wiggins, the children's primary residential parent and gave father, who lived in Westminster, three weekends per month plus additional time during school breaks, summers, and holidays. They also agreed to share decision-making responsibility.

¶ 3    About two years later, father filed a motion concerning parenting time disputes under section 14-10-129.5, C.R.S. 2025. In it, he alleged that mother violated the parenting time order by unilaterally relocating with the children to Fort Morgan. He also alleged that mother enrolled the older child in the Fort Morgan school district on her own despite the order that educational decisions be made jointly. Mother responded that the relocation added only fourteen minutes to father's drive time to see the

1

children and asserted that the school change had little impact on him, as he had been minimally involved with the children's prior school.

¶ 4      In October 2023, following a hearing, the magistrate entered an order concluding that mother's relocation did not violate the parenting time order but that her decision to change schools was a willful violation of the order. Despite that, the magistrate granted her sole decision-making responsibility over all major education matters and allocated father sole decision-making responsibility for the children's medical, dental, religion, "[p]assports," travel, and extracurricular activities. The magistrate scheduled a status conference in six months to evaluate whether the parties could resume joint decision-making responsibility and expressed "hope that . . . we can change this mess."

¶ 5      At the status conference, father reported, among other things, that the parties still disagreed regarding decision-making for the children. At a further status conference one month later, he again indicated ongoing decision-making problems. The magistrate reiterated that the October 2023 decision was temporary and set a contested hearing on modifying decision-making responsibility

permanently. The magistrate treated the matter as "a continuation of the parenting time dispute under section 14-10-129.5." Mother argued that the legal standard under section 14-10-131, C.R.S. 2025, applies when modification is sought in that context.

¶ 6    The magistrate made the following findings at a hearing conducted in July 2024:

- Mother's testimony regarding her efforts to co-parent and make joint decisions was not credible.

- Father repeatedly attempted to work with mother on the children's health care issues, yet mother had consistently refused to co-parent.

- Mother violated the October 2023 order by refusing to allow father to exercise his allocated sole decision-making responsibility regarding extracurricular activities.

- Mother failed to "cooperatively make decisions" related to the allocation for parenting time, such as the children's spring break and summer vacation.

- Mother did not place the children's needs ahead of her own and frequently undermined father's input.

- Mother blatantly ignored "[o]rders of this [c]ourt."

¶ 7     From those findings, the magistrate first acknowledged the presumption in favor of maintaining the existing allocation of decision-making responsibility, then determined that continuing it would endanger the children's emotional development and that the modification would serve the children's best interests. *See In re Marriage of Thorburn*, 2022 COA 80, ¶ 9 n.1 (district court's oral findings supplement its written order). The magistrate therefore designated father as the children's sole decision-maker.

¶ 8     Mother petitioned for district court review. The district court rejected the magistrate's decision, reasoning that (1) no formal motion to modify decision-making responsibility under section 14-10-131 had been filed, as required under section 14-10-129.5(2)(f); (2) the magistrate did not apply the full statutory analysis under section 14-10-131; and (3) the record did not support a finding of endangerment. The court reinstated the original 2021 joint decision-making responsibilities order.

¶ 9     Father now appeals.

## II.     Appellate Standard of Review

¶ 10    Our review of a district court's order rejecting a magistrate's decision is effectively a second layer of appellate review, and we

must accept a magistrate's factual findings unless they are clearly erroneous. *Thorburn*, ¶ 25; C.R.M. 7(a)(9). A court's factual findings are clearly erroneous only if there is no record support for them. *Thorburn*, ¶ 25. We review legal conclusions de novo, however. *See In re Parental Responsibilities Concerning S.Z.S.*, 2022 COA 105, ¶ 11.

## III. Discussion

¶ 11 Father contends that the district court erred by rejecting the magistrate's decision. He argues that the court improperly (1) altered the magistrate's factual findings that were substantially supported by the record; (2) determined that the magistrate incorrectly applied the analytical process prescribed by section 14-10-131; and (3) concluded that the evidence did not support the magistrate's finding of endangerment.

¶ 12 We affirm the district court's order, but for different reasons. *See Rush Creek Sols., Inc. v. Ute Mountain Ute Tribe*, 107 P.3d 402, 406 (Colo. App. 2004); *see also Deutsche Bank Tr. Co. Ams. v. Samora*, 2013 COA 81, ¶ 38 ("An appellate court may affirm the [district] court's ruling based on any grounds that are supported by the record.").

¶ 13     Under section 14-10-129.5(1), when a party files a motion claiming that the other party is not complying with a parenting time order or schedule, the district court must determine "whether there has been or is likely to be substantial or continuing noncompliance with the parenting time order or schedule." The court must then deny the motion, set an evidentiary hearing, or order the parties to seek mediation and report back. § 14-10-129(1)(a), (b), & (c). "If, after a hearing, a district court finds that a party has not complied with a parenting time order, it may enter certain remedial orders." *In re Marriage of Humphries*, 2024 COA 92M, ¶ 11; *see* § 14-10-129.5(2).

¶ 14     In accordance with its own statutory title, section 14-10-129.5 is limited to disputes concerning parenting time, not decision-making disputes. *See Humphries*, ¶ 11; *In re Marriage of Schlundt*, 2021 COA 58, ¶ 9. Parenting time and decision-making responsibility are separate legal concepts that serve different functions in allocating parental responsibilities. *See* § 14-10-124(1.5), C.R.S. 2025 ("The court shall determine the allocation of parental responsibilities, including parenting time and decision-making responsibilities, in accordance with the best interests of the

6

child . . . ."); *In re Marriage of Hall*, 241 P.3d 540, 543 (Colo. 2010) (the allocation of parental responsibilities is defined as both parenting time and decision-making responsibility). Thus, a district court cannot enter a remedial order modifying decision-making responsibility based on violation of a prior parenting time order or schedule unless the facts establish grounds for modifying decision-making responsibility under section 14-10-131(2). *See Humphries*, ¶¶ 11-20.

¶ 15    In contrast, the magistrate expressly found that mother's relocation to Fort Morgan did not violate the parenting time order, and nothing in the later proceedings suggested that she wasn't in compliance with that order[1]. Because there was no finding that mother violated the parenting time order or schedule under section 14-10-129.5(2), and the evidence did not support modification of decision-making responsibility under the endangerment standard in section 14-10-131(2)(c), the magistrate lacked authority to issue a remedial order allocating sole decision-making responsibility to

---

[1] Although it is not entirely clear, the context of comments in the record suggests that the magistrate's declaration that mother was not complying with court orders was directed to decision-making orders.

father. *See Humphries*, ¶ 11. On that basis, the district court correctly rejected the magistrate's decision. As a result, we affirm, albeit on other grounds. *See Rush Creek Sols., Inc.*, 107 P.3d at 406; *Samora*, ¶ 38.

¶ 16 The endangerment standard requires evidence that keeping the current decision-making order "would endanger the child's physical health or significantly impairs the child's emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child." § 14-10-131(2)(c). The standard is intended to be a high one. *In re Marriage of Fickling*, 100 P.3d 571, 573 (Colo. App. 2004); *see Humphries*, ¶ 20 ("The endangerment standard is more stringent than the best interests of the child standard.").

¶ 17 The magistrate did not identify any evidence showing that the children experienced emotional distress, school problems, or other negative effects from the parties' conflict. The magistrate did find that the older child was suffering from "significant emotional impairment" because the child was "afraid of even discussing extracurricular activities." However, father's testimony actually showed that he wanted to co-parent and support the children's

extracurricular activities, but he faced difficulties because of the distance between the parties' homes and his limited weekend time. He was worried that losing sole decision-making responsibility concerning extracurricular activities would create scheduling conflicts and put pressure on the children. He also explained that the older child had "mental breakdowns" about "actual sports," so he focused on informal activities, like bowling or basketball until the child felt ready to participate.

¶ 18    In *In re Marriage of Schlundt*, 2021 COA 58, ¶ 40, the district court found, among other things, that mother's complete refusal to accept court orders as well as her inability "to encourage a healthy relationship between the child and [f]ather" endangered the child's "emotional wellbeing." But the division concluded that those findings were insufficient because the court did not explain how the mother's demeanor in court or her beliefs about the court's orders significantly impaired the child's emotional development; nor did it find whether any potential benefits of modifying the parenting time order outweighed the harm of doing so. *Id.* The same analytical gap exists here. There was no strong connection between mother's behavior and the child's "mental breakdowns," and the magistrate

didn't determine whether the benefits of changing the decision-making responsibility order would outweigh the harm.

¶ 19　Moreover, the two cases the magistrate relied on don't support an endangerment finding on this record.

¶ 20　*In re Marriage of Newell*, 192 P.3d 529, 532 (Colo. App. 2008), involved a child who had limited intellectual abilities and multiple physical problems.  The district court found the child endangered because the father was unwilling to recognize the child's problems and was unable to cooperate with the mother in addressing those problems.  *Id.* at 534-35.  In contrast, there was no indication that either child here was denied necessary medical care or experienced negative health consequences.  Similarly, *In re Marriage of Hatton*, 160 P.3d 326, 335 (Colo. App. 2007), involved evidence that the mother's distorted views and delusional beliefs about the father actively harmed the children and enmeshed them in the conflict. There was no such finding here.  The record doesn't suggest manipulation, coaching, or "alienation."

¶ 21　At most, the magistrate's findings show less than ideal parenting and persistent parental disagreements.  Against this

background, the district court could not have concluded there was endangerment to the children.

## IV. Appellate Attorney Fees

¶ 22 Under C.A.R. 38(b) and section 13-17-102, C.R.S. 2025, mother asks for her appellate attorney fees based on the frivolity of this appeal. Although father has not prevailed, we deny her request. *See In re Marriage of Boettcher*, 2018 COA 34, ¶ 38 ("Fees should be awarded only in clear and unequivocal cases when the appellant presents no rational argument, or the appeal is prosecuted for the purpose of harassment or delay."), *aff'd*, 2019 CO 81.

## V. Disposition

¶ 23 The order is affirmed.

JUDGE DUNN and JUDGE LIPINSKY concur.