24CA1576 Marriage of Rensch 07-17-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1576
Adams County District Court No. 20DR30722
Honorable Teri L. Vasquez, Judge

In re the Marriage of

Stephanie Elizabeth Rensch,

Appellee,

and

Gabriel Thomas Rensch,

Appellant.

ORDER AFFIRMED

Division II
Opinion by JUDGE SCHUTZ
Fox and Harris, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 17, 2025

No Appearance for Appellee

Gabriel Thomas Rensch, Pro Se

¶ 1    In this post-decree dissolution of marriage case between Gabriel Thomas Rensch (father) and Stephanie Elizabeth Rensch (mother), father appeals the district court's order granting mother's request to relocate with their children and denying his request for full custody.  We affirm.

## I.    Background

¶ 2    In December 2020, the Adams County Human Services Department initiated a dependency and neglect case due to concerns over domestic violence.  At that time, father was behaving erratically, he grabbed one of their children and barricaded himself in the parties' home, and law enforcement had to intervene to negotiate the child's release.  In addition, father was accused of verbally abusing mother and exerting coercive control over her.

¶ 3    The juvenile court adjudicated the children dependent and neglected and, in 2022, it issued an order allocating parental responsibilities primarily to mother (the APR order).  The court found that father had committed acts of domestic violence, was resistant to treatment, and did not recognize the harm he was causing the children.  The court also found that, despite court orders defining his parenting time, father had failed to return the

1

children to mother twice during the case and that law enforcement intervened to locate and return the children, including one such incident when father left the state with them without notice or authorization. The court determined that the children's emotional and physical safety was "compromised" with father. It ordered that father could exercise only virtual supervised visits for one hour per week. It also ordered that if father engaged in specific therapeutic services, his parenting time could increase to in-person therapeutic supervised visits of at least two hours per week.

¶ 4    The juvenile court certified the APR order into the dissolution case, and the district court dissolved the marriage.

¶ 5    Shortly after the APR order, father filed motions to modify, ultimately asking the district court to allocate him "full custody." During the pendency of his motions, mother filed a motion to relocate to New York with the children. Mother also notified the court that father had recently exercised his second in-person therapeutic supervised visit and that, during the visit, he tried to leave with one of the children. (The felony criminal charges for that incident have not yet been resolved.)

¶ 6    After a hearing, the court granted mother's motion to relocate and denied father's request for full custody.  Additionally, the court restricted father's parenting time, not allowing him to have any visits with the children until he engages in six months of individual therapy, completes a psychological evaluation, and receives a written opinion from his therapist that he can safely exercise supervised therapeutic parenting time.

## II.    Standard of Review

¶ 7    The court has broad discretion when determining whether to modify a parenting time order.  *In re Parental Responsibilities Concerning S.Z.S.*, 2022 COA 105, ¶ 13.  We will not disturb a court's decision absent a showing that the court acted in a manifestly arbitrary, unreasonable, or unfair manner, or it misapplied the law.  *In re Marriage of Collins*, 2023 COA 116M, ¶ 8.

## III.    Mother's Relocation with the Children

¶ 8    Father contends that the court abused its discretion by allowing mother to relocate with the children.  We are not persuaded.

¶ 9    When the parent with whom the children primarily reside intends to relocate to a residence that substantially changes the

3

geographical ties between the children and the other parent, the court must determine, based on the statutory best interests factors and relocation factors, whether it is in the children's best interests to relocate with the requesting parent. § 14-10-124(1.5)(a), C.R.S. 2024; § 14-10-129(2)(c), C.R.S. 2024; *see also In re Marriage of Ciesluk*, 113 P.3d 135, 140 (Colo. 2005). The parents equally share the burden to demonstrate to the court whether relocation is in the children's best interests or contrary to those interests, and the court may not apply a presumption in favor of either parent's position. *Ciesluk*, 113 P.3d at 147-48.

¶ 10    In a detailed and thorough ruling, the district court considered the relevant statutory factors and concluded that based on the present circumstances, it was in the children's best interests to relocate to New York with mother. The court found that the children had "a really strong relationship with [m]other," mother was a consistent presence in the children's lives, and, since the APR order, the children had lived exclusively with mother. *See* § 14-10-124(1.5)(a)(III), (IV); § 14-10-129(2)(c)(III), (VI). It also found that even though mother struggled to encourage the sharing of love, affection, and contact between the children and father due to his

4

past conduct, she could place the children's best interests above her own to foster that relationship. *See* § 14-10-124(1.5)(a)(VI), (XI).

¶ 11　　By contrast, the court found that the children had a strained relationship with father, and for the past two years, he had very limited contact with the children. *See* § 14-10-124(1.5)(a)(III); § 14-10-129(2)(c)(III). The court also found that father had not complied with the court's orders, referencing repeated violations of the court-imposed limitations on his parenting time; he had a history of abusive behavior against mother in front of the children; he had traumatized the children; and he failed to understand the impact his actions had on them. *See* § 14-10-124(1.5)(a)(III), (III.5), (V), (VII); § 14-10-129(2)(c)(III). It also found that father had significant mental health concerns, and that despite court orders to address those concerns, he had not integrated the recommended treatment in a manner that rendered him fit to safely parent the children. *See* § 14-10-124(1.5)(a)(III), (V); § 14-10-129(2)(c)(III). The court found that father's conduct had caused significant conditions to be placed on his ability to exercise parenting time. *See* § 14-10-129(2)(c)(VIII). And it found that the evidence failed to establish that father could

encourage the children's relationship with mother or place the children's needs ahead of his own. *See* § 14-10-124(1.5)(a)(VI), (XI).

¶ 12 Additionally, the court found that, in New York, the children would have access to better educational opportunities and the family would have more financial stability. *See* § 14-10-129(2)(c)(I), (IV). It also found that the children would be near family friends, who had children of similar ages, in New York. And the court determined that the children would likely adapt well to the move. *See* § 14-10-129(2)(c)(VII). The court then found that while the children had extended family in Colorado, no evidence showed that they had "any deep bonds or connections" to that family. *See* § 14-10-129(2)(c)(V).

¶ 13 Father argues that the court's ruling cannot stand because many of its findings are unsupported by the record, and he highlights evidence that he believes contradicts the court's findings and determination. However, it was for the court to resolve the conflicts in the evidence, and when, as here, the record supports the court's findings, we will not disturb its ruling. *See Collins*, ¶ 8; *S.Z.S.*, ¶ 13; *see also In re Marriage of Thorburn*, 2022 COA 80, ¶ 49 (noting that credibility determinations and the weight, probative

force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn from the evidence, are matters within the district court's sole discretion).

¶ 14    Mother testified that she had a very strong relationship with the children and that, for approximately two years, the children had lived exclusively with her and seen father only a couple times. She also said that moving to New York with the children would serve their best interests, explaining that they could have an improved quality of life, a more stable living situation, and better educational opportunities. Mother explained that the children are very resilient and that they would adjust well to New York.

¶ 15    Moreover, mother testified that father (1) acted erratically and impulsively; (2) had "scared the children" when he tried to take one child from the therapeutic visit and had previously removed the children from Colorado without notice or authorization; and (3) struggled to acknowledge and understand that his actions traumatized the children. She also testified that unsupervised parenting time with father was not safe and that he must engage in treatment before he could safely parent the children.

¶ 16    Still, father highlights that he and mother testified that the children had family that lived in Colorado, and he argues that their testimony contradicts the court's finding that the children did not have a relationship with extended family in Colorado. While the parties noted family members lived in Colorado, they did not expand on the children's relationship with them. We therefore are not convinced that the court erred by finding that it did not receive evidence showing that the children had "any deep bonds or connections to extended family in Colorado." Moreover, this was one finding of many related to the relocation, and father develops no argument to show how this single purported misstatement affected his substantial rights. *See* C.A.R. 35(c) ("The appellate court may disregard any error or defect not affecting the substantial rights of the parties.").

¶ 17    Father also argues the court erred by finding that he committed acts of domestic violence, asserting that his actions did not meet the definition of domestic violence. The court recognized that the juvenile court found by a preponderance of the evidence that father committed acts of domestic violence against mother and had admitted to verbally abusing her. The court also noted that the

8

juvenile court had issued a permanent civil protection order limiting father's contact with mother and that, in father's criminal cases, additional mandatory protection orders were issued against him to protect mother. The court noted that father presented no evidence that was inconsistent with those prior findings.

¶ 18 Indeed, at the hearing, father confirmed that he previously admitted to doing "awful things" to mother and saying "a lot of awful things" to her. Father also confirmed that he had concealed mother's car in the past to prevent her from leaving with the children. In addition, mother testified concerning the training she received in the dependency and neglect case to protect the children from future exposure to domestic violence and the protection orders limiting father's contact with mother and one of the children. Moreover, the child and family investigator, who completed an investigation before the hearing, reported that there had been "a domestic disturbance" involving father in 2020. Thus, there is record support for the court's findings concerning domestic violence, and we therefore may not disturb them. *See Collins*, ¶ 8; *S.Z.S.*, ¶ 13.

¶ 19    To the extent father tries to challenge the domestic violence finding by the juvenile court, the record reflects that he previously appealed that order but then voluntarily dismissed his appeal. *See People in Interest of G.T.R.*, (Colo. App. No. 22CA2022, Feb. 6, 2023) (unpublished order). He thus cannot challenge that order now. *See In re Marriage of Barber*, 811 P.2d 451, 454 (Colo. App. 1991) (recognizing that we may not review a party's untimely appeal of a court's final order); *see also Hrabczuk v. John Lucas Landscaping*, 888 P.2d 367, 368 (Colo. App. 1994) ("The mandate provided for in C.A.R. 41 is intended to establish the finality of the judgment upon which the parties can rely and a direct attack upon the judgment after the mandate has issued is not contemplated by the appellate rules.").

¶ 20    Father argues, however, that the court "improperly shift[ed] the burden of proof" to him concerning mother's motion. But for a post-decree-relocation request, each parent has a burden to show that the proposed relocation is either in, or contrary, to the children's best interests. *Ciesluk*, 113 P.3d at 147-48. Moreover, father bore the burden to prove that his motions to modify parenting time served the children's best interests. *See In re*

10

*Parental Responsibilities Concerning B.R.D.*, 2012 COA 63, ¶ 30.
The court therefore properly placed a burden on father to present
evidence concerning the determination of parenting time.

¶ 21     Father also contends that the court did not "apply the same
standard of evidence" to him and mother.  He asserts that, at the
hearing, the court declined to admit his evidence concerning
mother's domestic violence that occurred before the APR order but
that it permitted mother to elicit evidence related to his conduct
from the same timeframe.  However, father already had the
opportunity to litigate his allegations of mother's alleged domestic
violence, and the juvenile court rejected his claims in the APR
order.  The juvenile court's determination was final, and the district
court acted within its discretion by not admitting evidence
concerning father's attempt to relitigate his factual accusations
previously rejected by the juvenile court.  *See Bly v. Story*, 241 P.3d
529, 535 (Colo. 2010) ("A trial court has broad discretion over the
admissibility of evidence."); *cf. Hrabczuk*, 888 P.2d at 368.  By
contrast, mother's questions to father concerning his interactions
with mother related to the basis of the juvenile court's restriction on
father's parenting time and whether the circumstances concerning

his endangering behavior had changed since the APR order. *See* § 14-10-124(1.5)(a); § 14-10-129(2)(c)(III).

¶ 22    Nor do we agree with father's general assertion that the court abused its discretion by conducting a combined hearing on mother's motion to relocate and his motions to modify the APR order. Father argues that, by doing so, the court delayed the resolution of his motions, but he overlooks that the court initially took no action on his motions because he appealed the dissolution judgment. *Cf. Musick v. Woznicki*, 136 P.3d 244, 246 (Colo. 2006) ("Generally, the filing of a notice of appeal shifts jurisdiction to the appellate court, thus divesting the trial court of jurisdiction to conduct further substantive action related to the judgment on appeal."). Father develops no argument that the court erred by staying those motions during the pendency of his appeal. *See S.Z.S.*, ¶ 29 (declining to consider an undeveloped appellate argument). Then, following the resolution of father's appeal, the court concluded that mother's and father's motions both concerned the allocation of parental responsibilities, and it determined that conducting a combined hearing was in the interests of judicial economy. That decision fell within the court's discretion and did

not cause unnecessary delay.  *See In re Marriage of Goellner*, 770 P.2d 1387, 1389 (Colo. App. 1989) (acknowledging the court's duty to efficiently manage the case before it).

¶ 23 To the extent father further asserts that (1) the court violated his constitutional rights or (2) erred by relying on a finding by another court that lacked jurisdiction, he does not develop any legal argument in support of his assertions, and therefore, we do not address them.  *See S.Z.S.*, ¶ 29.  Nor will we consider father's attempt to challenge court findings by relying on statements from the parental evaluators in the dependency and neglect case when those statements were not admitted during the present hearing.  *Cf. Melat, Pressman & Higbie, L.L.P. v. Hannon Law Firm, L.L.C.*, 2012 CO 61, ¶ 18 ("[A]rguments not advanced in the trial court . . . are generally deemed waived.").

¶ 24 In sum, the court did not abuse its discretion by granting mother's motion to relocate to New York with the children.

### IV.   Father's Parenting Time Restriction

¶ 25 Father also contends that the court abused its discretion by restricting his parenting time.  We disagree.

¶ 26 A court shall not restrict a parent's parenting time unless it finds that parenting time would endanger the children's physical health or significantly impair the children's emotional development. § 14-10-129(1)(b)(I); *see* § 14-10-124(1.5)(a).

¶ 27 The court found that father had significant mental health concerns and that he had been resistant to (1) engaging in the necessary treatment previously directed by the court and (2) integrating that treatment into his parenting to safely care for the children. The court explained that father traumatized the children by taking them to another state without authorization and requiring law enforcement to intervene. And it explained that he exhibited the same erratic and impulsive behavior after the APR order entered when he tried to take one of the children from a therapeutic supervised visit. The court further found that, despite years of court involvement, father did not recognize the harm his actions and behavior had caused to the children. These findings sufficiently demonstrate that the court determined that parenting time with father endangered the children. *See In re Marriage of Parr*, 240 P.3d 509, 512 (Colo. App. 2010) ("[W]hat constitutes endangerment to a particular child's physical or emotional health is

14

a highly individualized determination . . . .").  The evidence discussed above supports the court's decision to restrict father's parenting time, and we therefore will not disturb it.  *See In re Marriage of Newell*, 192 P.3d 529, 534-35 (Colo. App. 2008) (declining to disturb a court's endangerment finding supported by the record).

¶ 28    We also reject father's argument that the court improperly required him to engage in therapy and complete a psychological evaluation before he could request parenting time.  A court, in its discretion, may impose reasonable conditions restricting parenting time to serve the children's best interests.  *See In re Marriage of Zebedee*, 778 P.2d 694, 699 (Colo. App. 1988) (approving a condition that required father to complete psychological counseling as a condition precedent to exercising parenting time).  The court found, with record support, that father's erratic and impulsive conduct indicated concerns with his mental health.  It further found that he must engage in treatment to understand the effect his behavior was having on the children and learn to integrate that treatment into his parenting to safely care for the children.

¶ 29　　The court therefore acted within its discretion to restrict father's parenting time and impose conditions on him before it would allow him to exercise parenting time.

## V.　Disposition

¶ 30　　The order is affirmed.

JUDGE FOX and JUDGE HARRIS concur.